1  LAWRENCE J. GOTTS (*pro hac vice*)
   lawrence.gotts@lw.com
2  LATHAM & WATKINS LLP
   555 Eleventh Street, N.W., Suite 1000
3  Washington, D.C.  20004-1304
   Telephone:  (202) 637-2200
4  Facsimile:   (202) 637-2201

5  FRANKLIN D. KANG (Bar No. 192314)
   franklin.kang@lw.com
6  LATHAM & WATKINS LLP
   355 South Grand Avenue
7  Los Angeles, CA  90071-1560
   Telephone:  (213) 485-1234
8  Facsimile:   (213) 891-8763

9  Attorneys for Defendants and Counterclaimants
   SEOUL SEMICONDUCTOR COMPANY, LTD. AND
10 SEOUL SEMICONDUCTOR, INC.
   [Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V.; and PHILIPS LUMILEDS LIGHTING COMPANY LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>SEOUL SEMICONDUCTOR COMPANY, LTD.; and SEOUL SEMICONDUCTOR, INC.,<br><br>    Defendants.<br><br>SEOUL SEMICONDUCTOR COMPANY, LTD.; and SEOUL SEMICONDUCTOR, INC.,<br><br>    Counterclaimants,<br><br>    v.<br><br>PHILIPS LUMILEDS LIGHTING COMPANY LLC; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION; and KONINKLIJKE PHILIPS ELECTRONICS N.V.,<br><br>    Counterdefendants. | Case No. SACV11-00356 AG (RNBx)<br><br>**DECLARATION OF DR. E. FRED SCHUBERT IN SUPPORT OF SEOUL SEMICONDCUTOR'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RE U.S. PATENT NO. 5,779,924** |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

I, Professor E. Fred Schubert, declare as follows:

## I. ENGAGEMENT AND OVERVIEW OF OPINIONS

1. I have been retained as a technical expert witness on behalf of Seoul Semiconductor Company, Ltd. and Seoul Semiconductor, Inc. (collectively "Seoul Semiconductor") in connection with Case No. 11-cv-00356 (AG) (RNBx) (C.D. Cal.). I have been asked to evaluate the scope and meaning of claims 1, 4, and 16 of U.S. Patent No. 5,779,924 ("the '9,924 patent") and, on the basis of this evaluation, render an expert opinion as to the validity of these claims of the '9,924 patent. I have also been asked to evaluate the Declaration of Dr. Russell Dupuis in Support of Plaintiff's Motion for Preliminary Injunction re the '9,924 patent, (Dkt. No. 52-2), and to opine on whether this declaration supports that the Acriche A2, A3, and A4 LEDs infringe claims 1, 4, and 16 of the '9,924 patent.

2. I have been asked to opine on the validity of claims 1, 4, and 16 of the '9,924 patent in light of the following nine prior art references:

   a. U.S. Patent No. 3,739,217, "Surface Roughening of Electroluminescent Diodes," Issued on June 12, 1973 to Bergh, et al. ("Bergh");

   b. F.D. King, et al., "Integral Lens Coupled LED," J. of Elec. Materials, Vol. 4, No. 2, pp. 243-53 (1975) ("King Article");

   c. U.S. Patent No. 3,981,023, "Integral Lens Light Emitting Diode," issued on September 14, 1976 to King, *et al.* ("King Patent");

   d. U.S. Patent No. 5,162,878, "Light-Emitting Diode Array with Projections," issued on November 10, 1992 to Sasagawa, *et al.* ("Sasagawa");

   e. European Patent Appl. Publ. No. 0361602 A2, "A Light Emitting Device," filed by Dobson and published April 4, 1990 ("Dobson");

   f. A certified translation of Japanese Patent Appl. No. H07-202257, "Light Emitting Diode," filed by Saka, *et al.* and published August 4, 1995 ("Saka");

   g. A certified translation of Japanese Patent Appl. No. H07-153991, "Light Emitting Diode and its Production," filed by Nagashima and published June 16, 1995 ("Nagashima");

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

      h.    A certified translation of German Unexamined Patent Application DE 4518806 A1, "Mesa Luminescent Semiconductor Element," filed by Temic Telefunken Microelectronic and published December 9, 1993 ("Temic");

      i.    U.S. Patent No. 5,008,718, "Light-Emitting Diode with an Electrically Conductive Window," issued on April 16, 1991 to Fletcher, *et al.* ("Fletcher").

3.    In connection with evaluating validity, I have been asked to consider how a person of ordinary skill in the art would understand claims 1, 4, and 16 in view of the disclosure of the '9,924 patent. I have also been asked how a person of ordinary skill in the art would understand the references listed above. In addition, I have been asked to consider whether or not a person of ordinary skill in the art would understand whether these references anticipate or render obvious certain claims of the '9,924 patent. It is my opinion that a person of ordinary skill in the art would find that claims 1, 4, and 16 of the '9,924 patent are anticipated or obvious, as discussed in more detail below and in charts attached as Exhibit 1.

4.    I have also been asked to review and evaluate the Declaration of Dr. Russell Dupuis in Support of Plaintiff's Motion for Preliminary Injunction re U.S. Patent No. 5,779,924 ("Dupuis '9,924 Declaration"). (*See* Dkt. 52-2.) As discussed below, it is my opinion that the Dupuis '9,924 Declaration fails to establish that SSC's Acriche A2, A3, and A4 products infringe claims 1, 4, and 16 of the '9,924 patent. First, Dr. Dupuis fails to explain what the terms of the asserted claims mean when reaching his conclusion of infringement. Second, portions of the charts accompanying Dr. Dupuis's declaration are conclusory and fail to provide adequate support for his allegations. Finally, it is my opinion that Dr. Dupuis cannot show infringement of certain claim limitations based on a proper understanding of the claims.

2

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

## II. QUALIFICATIONS

5. My curriculum vitae is attached as Exhibit 2. As shown in my CV, I have over 25 years of experience in the field of light-emitting diodes (LEDs), including substantial experience researching issues related to light extraction from LEDs and laser diodes.

6. I received my Master Degree in Electrical Engineering from the University of Stuttgart in Germany in 1981. I received my Ph. D. degree in Electrical Engineering from the University of Stuttgart in 1986. Subsequent to my education, I worked in industry, at AT&T Bell Laboratories in Holmdel and Murray Hill NJ, for 10 years. I then joined academia, first Boston University (Boston MA) where I worked for 7 years, and then Rensselaer Polytechnic Institute (Troy NY) where I have been working for the last 9 years. I am currently the Wellfleet Senior Constellation Professor in the Electrical Engineering and Physics departments at Rensselaer. I have been elected a Fellow of the American Physical Society (APS), the Institute of Electrical and Electronics Engineers (IEEE), the Optical Society of America (OSA), and the International Society for Optical Engineering (SPIE).

7. My field of expertise is in light-emitting diodes (LEDs). I have been working in this field for more than 25 years. My work included the design, theoretical modeling, epitaxial growth, fabrication, and testing of LEDs as well as the application of LEDs in communication systems and lighting systems. I have co-authored more than 275 publications in the field of compound semiconductor technology, many of them in the field of LEDs. I am a co-inventor on more than 30 US patents, many of them in the field of LEDs. At Boston University and Rensselaer Polytechnic Institute, I have taught multiple academic courses dedicated to the topic of LEDs. At international conferences, I have taught many short courses dedicated to the topic of LEDs. I have authored multiple books. One of them is a well-known textbook entitled "Light-Emitting Diodes", whose second

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

1  edition was published by Cambridge University Press in 2006.  The book was
2  translated into other languages including Russian, Japanese, and Korean.  The
3  book is used in industry and as a textbook for academic courses at multiple
4  universities in the United States and in foreign countries.

5      8.    I am being compensated at my standard hourly rate of $500 for my
6  work on this declaration.  My compensation is not dependent on the outcome of
7  this litigation.  I have no financial interest in either Seoul Semiconductor Co. or
8  Seoul Semiconductor Inc.

### III. MATERIALS CONSIDERED

10     9.    A list of the materials I considered in formulating my opinions is
11 attached as Exhibit 3.

### IV. MY UNDERSTANDING OF THE LEVEL OF ORDINARY SKILL IN THE RELEVANT ART

14     10.    I am familiar with the level of ordinary skill in the art relevant to the
15 '9,924 patent as of the March 22, 1996 filing date of that patent.  In my opinion, a
16 person of ordinary skill in the art at the time of the invention would have held a
17 Bachelor of Science degree in Electrical Engineering, Physics, or Materials
18 Science and five years or more years of experience in optoelectronic device
19 fabrication; a Master of Science degree in in Engineering, Physics, or Materials
20 Science and three years or more years of experience in optoelectronic device
21 fabrication; or a Ph.D. degree in in Engineering, Physics, or Materials Science and
22 two years or more years of experience in optoelectronic device fabrication.

### V. MY UNDERSTANDING OF ANTICIPATION AND OBVIOUSNESS

24     11.    I understand that "anticipation" is a question of fact and that for a
25 reference to anticipate a claimed invention it must disclose each and every element
26 set forth in the claim for that invention.  I further understand that the requirement
27 of strict identity between the claim and the reference is not met if a single element
28 or limitation required by the claim is missing from the applied reference.  In other

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

words, every limitation of a claim must identically appear in a single prior art reference for it to anticipate a claim.

12. In addition, I understand that in order to anticipate an invention, a prior art reference must be enabling to one of ordinary skill in the art. It is my further understanding that a claimed invention is unpatentable if the differences between the invention and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

13. It is my understanding that "obviousness" is a question of law based on underlying factual issues including the content of the prior art and the level of skill in the art. I understand that for a single reference or a combination of references to render the claimed invention obvious, a person of ordinary skill in the art must have been able to arrive at the claims by altering or combining the applied references.

14. I also understand that when considering the obviousness of a patent claim, one should consider whether a teaching, suggestion, or motivation to combine the references exists so as to avoid impermissibly applying hindsight when considering the prior art. I understand this test should not be rigidly applied, but that the test can be important to avoiding such hindsight.

## VI. MY UNDERSTANDING OF INFRINGEMENT

15. I understand that determining whether a product infringes a patent claim is a two-step process. First, a court defines the scope of the claims through a procedure called "claim construction." The factors that go into construing claim terms are discussed in the following section. Second, the properly construed claims are compared to the accused device to determine whether all of the claim limitations are present. I understand that infringement is assessed on a claim-by-claim basis and that one must compare an accused device with each and every one of the requirements of a claim to determine whether all of the requirements of that

claim are met. If an accused device lacks any requirement of a patent claim, that device does not infringe the claim.

16. I understand that if an independent claim is not infringed, there cannot be infringement of any claim that depends on that independent claim.

## VII. UNDERSTANDING OF THE MEANING OF CLAIM TERMS IN CLAIMS 1, 4, AND 16 OF THE '9,924 PATENT

17. For purposes of my analysis of non-infringement and invalidity, I am using the meanings below for key terms in claims 1, 4, and 16 of the '9,924 patent. Evidence supporting these meanings is provided in Seoul Semiconductor's Preliminary Claim Construction Positions and Supporting Evidence Exhibit. *See* Owens Decl. Exhibit 1. These meanings are consistent with my understanding of these claim terms after carefully reviewing the use of the terms in the claims, the specification, and the prosecution history and drawing on my 25 years of experience in the field of light-emitting diodes.

| Claim Term | Preliminary Construction |
| --- | --- |
| "*substrate*" | "a base material upon which the semiconductor layers of the light emitting device are grown upon or attached" |
| "*p-n junction region*" | "a region where n-type and p-type charge carriers combine to emit light" |
| "*adjacent*" | "adjoining or near without anything of the same kind in between" |
| "*transparent window layer*" | "a layer transparent to light emitted from the p-n junction region"<br>(Philips' apparent position) |
| "*interface*" | "any region between dissimilar media or any contiguous combination of such regions" |
| "*positioned in the device*" | "positioned on a top surface, a bottom surface, or embedded within the device" |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

| | |
|---|---|
| ***"textured with repeated features in at least one selected direction"*** | The plain meaning of this language covers one-dimensional gratings |
| ***"wherein the periodicity for at least two of the directions has an associated period between 0.1 and 5.0 microns"*** | "wherein the periodicity for at least two of the directions has an associated period between 0.1 and 5.0 microns, although the two directions do not necessarily have the same periodicity" |

## VIII. OPINION ON NOVELTY AND OBVIOUSNESS OF THE '9,924 PATENT

18. I have carefully reviewed the '9,924 patent. In my opinion, the '9,924 patent does not disclose features that would have been new or non-obvious to one of skill in the art as of March 22, 1996 (if not earlier). The problem of total internal reflection discussed in the '9,924 patent has been known since the infancy of LED technology in the 1960s. Light emitting devices having interfaces textured with periodic features in one or more directions to improve light extracting have similarly been known for decades, for example the Bergh, King Article, and King Patent from the 1970s. And in the early to mid-1990s many variations on periodic features to improve light extraction were disclosed. (*See, e.g.*, Sasagawa, Saka, Nagashima, Dobson, and Temic.) In short, in my opinion these references alone or in combination anticipate or render obvious the claims of the '9,924 patent.

19. The support for my opinions is provided in the charts attached as Exhibit 1 to my declaration. In addition, I briefly summarize below my anticipation and obviousness opinions.

20. **Bergh**: Bergh is United States patent that issued June 12, 1973 and therefore, I understand, qualifies as 102(b) prior art to the '9,924 patent. *See* Exhibit 4. Bergh anticipates claim 1 of the '9,924 patent. For example, Bergh discloses using periodic interface features in an LED to improve light extraction:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

"The internal reflection problem is attacked here by the inventive use of surface irregularities to control the angular distribution of the light radiation within the solid so that more escape into the ambient and to control the angular distribution of the emerging light . . . . the utility of periodic irregularities, such as machined grooves, in some situations, is included in this teaching." (Ex. 4, col. 1:49-61.)

21. ***King Article***: The King Article is a journal article published in 1975 and therefore, I understand, qualifies as 102(b) prior art to the '9,924 patent. *See* Exhibit 5. The King Article anticipates claims 1 and 4 of the '9,924 patent. For example, the King Article addresses the problem of total internal reflection in LEDs. *Id*. at pp. 243-44 ("[S]imple geometrical considerations indicate that, in a parallel faced LED, (Fig. 1A) light initially reflected at the semiconductor-medium interface has little chance of penetrating this interface after subsequent reflections. The vast majority of the photons generated by carrier recombination are internally reflected several times and are eventually absorbed within the device.") To address this problem, the King Article discloses using periodic interface features in an LED to improve light extraction. *Id*. at p. 245 ("The new structure is arranged so that a number of converging lens shapes are created in the emitting surface of a Burrus type high radiance N-side emitting LED (Fig. 1C). The lenses reduce the internal reflection that occurs with the usual flat semiconductor interface, partially collimate the emitted light and increase the probability that photons initially reflected may subsequently escape from the device.") In particular, the King Article discloses using hexagonally close packed features. *Id*. at p. 245 ("Employing conventional photoresist techniques, a close packed array (typically 10 μm holes on 40 μm centers) of circular holes were opened in the oxide.") This is seen in the Figure 4, with annotations, below.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT



Fig.4  Emitting face of typical completed device.

22. **King Patent**: The King Patent is a United States patent issued on September 14, 1976 and therefore, I understand, qualifies as 102(b) prior art to the '9,924 patent. *See* Exhibit 6. The King Patent anticipates claims 1 and 4 of the '9,924 patent. The King Patent, like the King Article, addresses the problem of total internal reflection in light emitting diodes. (Ex. 6, Abstract ("A light emitting diode structure has one or more convex lens formations formed on the surface through which the light issues to provide larger incident angles and reduce internal reflection.").) Also, like the King Article, the King patent discloses using a periodic, hexagonally close packed array of interface features in the LED, as seen in Figure 5 below as annotated.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT



23. **Sasagawa**: Sasagawa is a United States patent issued November 10, 1992 and therefore, I understand, qualifies as 102(b) prior art to the '9,924 patent. *See* Exhibit 7. Sasagawa anticipates claims 1 and 16 of the '9,924 patent. Sasagawa discloses using a periodic array of "sawtooth-shaped projections" at an interface of an LED to address total internal reflection. *Id*. at col. 6:16-22. ("In the light emitting diode array 9, the large decrease in total reflection loss of light from the emission layer 14 obtained by forming the optical output surface as a total reflection prevention surface 21 having sawtooth-shaped projections results in an optical output efficiency that is twice as good compared to when there are flat surface portions.") Sasagawa also discloses two-dimensional arrays of features on an interface to improve light extraction. *Id*. at col. 9:66 – 10:3 ("Still further, although the light-emitting elements have been described with the total reflection surface having a sawtooth configuration, it is also possible to use other surface configurations, such as pyramidal or rectangular, or has a Fresnel pattern or a dot pattern, for example.")

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

24. **Dobson**: Dobson is a European Patent Application published April 4, 1990 and therefore, I understand, qualifies as 102(b) prior art to the '9,924 patent. *See* Exhibit 8. Dobson anticipates claims 1 and 16 of the '9,924 patent. Dobson discloses improving light extraction from an active layer in a light emitting device, including a light emitting diode, by using for example a two-dimensional grating. *Id*. at col. 7:58 - 8:3 ("The light emitting device need not necessarily be a laser diode but could merely be a light emitting diode in which case the cleaved end faces would not be needed."); col. 7:29-35 ("[T]he periodic grating may be a two-dimensional grating 4, that is a grating which has the period $\wedge$ in a direction perpendicular to the plane of Figure 5 in addition to that shown. The use of a two-dimensional grating should assist in coupling more frequency-doubled light out of the device."). Figure 7 shows an example of a periodic grating embedded within the light emitting device.



25. **Saka**: Saka is a Japanese Patent Application published August 4, 1995 and therefore, I understand, qualifies as 102(a) prior art to the '9,924 patent. *See* Exhibit 9. Saka anticipates claims 1, 4, and 16 of the '9,924 patent. For example, Saka discloses improving light extraction by using a two-dimensional

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

periodic array of concave and convex parts as seen in Figures 2 (top-view) and 3 (side-view) below. *Id.* at ¶[0005] ("[I]n the case in which light is reflected at the light ejection surface, the light that is respectively reflected by those concave parts and convex parts is such that the mutual phases differ by ½ wavelength and cancel each other out, so, as a result, reflection is reduced. Therefore, the quantity of light that is ejected from the light ejection surface to the exterior becomes large, and the light emission efficiency of the light emitting diode is increased.") Saka also discloses that the rectangular-shaped convex parts can be replaced with circular structures, which would create a near hexagonal close packed array. *Id.* at ¶[0015], [0016] ("[I]n the previously discussed embodiment, the convex parts 26 and the recess holes 28 were such that the planar shapes and the cross-sectional shapes thereof were made approximately rectangular shapes, but the shapes may be appropriately changed. For example, the planar shapes of the two may be made as triangular shapes or other polygonal shapes, and the planar shape of one may be made circular.)





26. *Nagashima*: Nagashima is a Japanese Patent Application published June 16, 1995 and therefore, I understand, qualifies as 102(a) prior art to the '9,924 patent. *See* Exhibit 10. Nagashima anticipates claims 1 and 16 of the '9,924 patent. For example, Nagashima recognizes the problem of total internal reflection in light emitting diodes. *Id*. at ¶[0006] ("[T]he refraction index of a GaAs layer is approximately 3.6, while the critical angle for light to be released to the exterior is approximately 17 degrees. Accordingly, the majority of the light is repeatedly reflected with the crystal several times, and it is finally extinguished through being absorbed by P-type GaAs layer 3 having the above described large absorption coefficient.") Nagashima addresses the problem of total internal reflection in a light emitting diode by disclosing a periodic array of recesses and protrusions at the interface between the substrate and a layer of the p-n junction. *Id*. at ¶[0015] ("In the above explanation there was produced a P-N junction having recesses and protrusions by establishing stripe shaped channels in parallel, but it is clear that it is also acceptable to form a fixed density of recesses having a fixed size and depth.") Nagashima also discloses forming two-dimensional arrays. *Id*. ("In the above explanation there was produced a P-N junction having recesses and protrusions by establishing stripe shaped channels in parallel, but it is clear that it is also acceptable to form a fixed density of recesses having a fixed size and depth.")

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE U.S. PATENT NO. 5,779,924 PATENT

27. ***Temic***: Temic is a German Unexamined Patent Application published December 9, 1993 and therefore, I understand, qualifies as 102(b) prior art to the '9,924 patent. *See* Ex. 11. Temic renders claim 1 of the '9,924 patent obvious in combination with Fletcher, as discussed below. Temic discloses using a two-dimensional periodic structure, as seen in the Figure below, to increase the emanation of light from the top surface of an LED. *Id.*, col. 1 ("The recesses created in the surface of the epitaxial layer, i.e. in the mesa surface, correspond in their function to "micro reflectors" which enlarge the surface area of the epitaxial layer. More surface area is therefore available for the emanation of light and/or radiation in comparison with conventional luminescent semiconductor elements and the probability of light emanation and/or radiation emanation increases, and therefore more light and/or radiation can emanate from the LED at a certain current flux.")



FIG. 1

28.  ***Fletcher***:  Fletcher is a United States patent issued April 16, 1991 and therefore, I understand, qualifies as 102(b) prior art to the '9,924 patent.  *See* Ex. 12.  Fletcher explicitly discloses an LED using a "window layer."  *See id*. at col. 2:67 – 3:1 ("Overlying the upper confining layer 23 of AlGaInP is a p-type window layer 24 epitaxially grown on the upper confining layer.")  Philips appears to have given the term "window layer" in claim 1 a broad meaning for purposes of infringement, but Philips may try to narrow its meaning of "window layer" to avoid prior art.  Most of the prior art discussed above may still anticipate claim 1 under a reasonable construction of "window layer," but to the extent the prior art does not, Fletcher can be combined with any of the above prior art to explicitly provide a "window layer."  In my opinion, one of ordinary skill in the art would be motivated to combine the LED structure of Fletcher, including its "window layer," with Bergh, the King Article, the King Patent, Sasagawa, Dobson, Saka, Nagashima, or Temic.  Fletcher, like these references, involves light-emitting semiconductor devices such as light-emitting diodes and laser diodes.  Fletcher also recognizes the problem of total internal reflection.  *Id*. at col. 3:17-22 ("Relatively thicker windows . . . also have the geometric effects of reducing total internal reflection of light within the LED chip.")  One of ordinary skill in the art would recognize the benefit of using periodic features on an interface of an LED chip, as disclosed in the references above, along with the window layer structure disclosed in Fletcher to further address the commonly identified problem of total internal reflection.

## IX. GENERAL OPINION ON THE STATE OF THE ART

29.  ***Hexagonal Close Packed***:  In my opinion, arranging features in a hexagonal close packed pattern would have been common knowledge and a trivial variation to one of ordinary skill in the art in the field of light-emitting devices.  *See, e.g.*, Ex. 5 (King Article); Ex. 6 (King Patent); Ex. 13 (N.G. Borrelli, *et al*.,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

"Imaging and Radiometric Properties of Microlens Arrays"); Ex. 14 (D. Daly, *et al.*, "The Manufacture of Microlenses by Melting Photoresist"); Ex. 15 (U.S. Patent No. 5,442,252, "Lenticulated Lens with Improved Light Distribution"); Ex. 16 (U.S. Patent No. 5,043,856, "Lighting Lens"); Ex. 17 (U.S. Patent No. 4,496,216, "Method and Apparatus for Exposing Photosensitive Material").

## X.  OPINION ON THE DECLARATION OF DR. DUPUIS

30.  Dr. Dupuis states that "[i]n terms of claim construction, a POSITA [Person of Ordinary Skill in the Art] at the time of the patent would use the plain and ordinary meaning of the words." Dupuis '9,924 Decl., 6:6-7. He also states that "[m]any of the words in the claims are commonly used words associated with electronics packaging of semiconductor devices." *Id*. at 6:7-9. However, Dr. Dupuis does not explain what he actually understands the claim terms to mean.

31.  In my opinion, the charts accompanying Dr. Dupuis's declaration that allegedly show how the Acriche A2, A3, and A4 infringe claims 1, 4, and 16 are generally unclear and not well supported. For example, Dr. Dupuis's attempts to identify the layers of the device and their relative positions for claims 1 and 4 are especially confusing and lacking in support. Therefore, in my opinion, Dr. Dupuis has not adequately demonstrated that the A2, A3, and A4 devices infringe claims 1 and 4 of the '9,924 patent. On claim 16, it is not clear exactly how Dr. Dupuis is interpreting the claims since he does not provide his specific understanding of the claim terms. However, I do not see how the terms of this claim can be construed to cover the Acriche products yet avoid the prior art discussed above and in the charts attached as Exhibit 1.

32.  In addition, as explained below, it is my opinion that Philips has failed to show that the Acriche A2, A3, and A4 devices infringe Claims 1 and 4 based on the evidence provided in Dr. Dupuis's charts and under the constructions of the claim terms in Claim 1 provided in section VII above.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT

33. ***Philips has failed to show that the Acriche A2, A3, and A4 devices have a "p-n junction region having multiple layers, . . . [with] . . . one of the layers being adjacent the substrate":*** I agree that the common meaning of "adjacent" is "adjoining or near without anything of the same kind [i.e., another layer] in between" and that it appears to be used in this sense in the '9,924 patent. *See* Owens Decl., Ex. 2 (Claim Construction Positions). LEDs can have complex layer structures and the evidence Philips provides in no way establishes that one layer of the p-n junction region is "adjacent" the substrate. For example, for the A2 device, Dr. Dupuis provides a cross-section of what appears to be an LED device but only generally identifies the regions he considers to be the "n-region" and "p-region." (Dupuis '9,924 Decl., RD4 at p. 1.) He fails to identify where the substrate is and whether a layer of the p-n junction region is "adjacent" to the substrate. Dr. Dupuis's chart for the A3 device highlights the problems with Philips' attempt to show infringement. On page 4 of the Exhibit RD5, Dr. Dupuis argues that in the A3 device both a "transparent window layer" and an alleged aluminum nitride ("AlN") layer separate the bottom of the p-n junction region from the sapphire substrate. The p-n junction region cannot be "adjacent" to the substrate when there are at least two other layers between the two. For the A4 device, Dr. Dupuis cites to the exact same electron micrograph and, therefore, Dr. Dupuis's conclusions as to the A4 device are likely wrong for the same reasons discussed above with the A3 device. *See* Exhibit RD6 at p. 4. It is also unclear, since Dr. Dupuis uses the same electron micrograph for both the A3 and A4 devices, whether this electron micrograph is actually of an A3 device, an A4 device, or neither.

* * *

34. My analysis is ongoing and I reserve the right to revise, supplement, and amend my opinions based on new information and further analysis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of October, 2011 in Troy, New York.

Respectfully submitted,

*/s/ E.F. Schubert/*

Prof. E. Fred Schubert

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

Case No. SACV11-00356 AG (RNBx)
DECL. OF PROF. E. FRED SCHUBERT RE
U.S. PATENT NO. 5,779,924 PATENT